## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THOMAS BEVERLY,**<br><br>　　　　　**Plaintiff,**<br><br>　　-v-<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANSUNION, LLC, CITIBANK, N.A., and CITIZENS BANK, N.A.,**<br><br>　　　　　**Defendants.** | **Civil Case Number:**<br><br>__**CIVIL ACTION**__<br><br>**COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL** |

## __INTRODUCTION__

1.　　Identity theft has long been a widespread problem in this country.  Over the past decades, identity theft has emerged as one of the fastest growing white-collar crimes in the United States.[1]  Millions of Americans annually fall victim to this crime and are required to spend countless hours and untold effort in attempting to undo the resulting harm caused to their credit reports.[2]

2.　　Plaintiff, Thomas Beverly, has been the unfortunate victim of identity theft.  Specifically, upon information and belief, at least one identified individual opened an account with Citizens Bank under Plaintiff's name, without his knowledge or authorization.  This account has

---

[1] *See, Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 505 (4th Cir. 2007).

[2] Victimization surveys conducted by Synovate for the Federal Trade Commission estimate that, between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone.  *See,* Graeme R. Newman & Megan M. NcNally, *Identity Theft Literature Review* 14 (2005), http://www.ncjrs.gov/pdffiles1/nij/grants/210459.pdf (citing Synovate, Federal Trade Commission—Identity Theft Survey Report 7, 12 (2003), http:// www.ftc.gov/os/2003/09/synovatereport.pdf).

destroyed Mr. Beverly's credit with each of the credit reporting agencies reporting this account negatively.

3.      Rather than working with Mr. Beverly to rectify this unfortunate situation, each of the Defendants refuse to remove this fraudulent account from his credit report, despite the Plaintiff specifically disputing the fraudulent item.   Instead, the Defendants have continued to willfully and negligently harm the Plaintiff's credit report by continuing to associate this fraudulent account with the Plaintiff, thereby severely impacting Plaintiff's life and his ability to obtain credit.

4.      Plaintiff thus brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA") alleging Equifax Information Services, LLC, Experian Information Solutions, Inc., Transunion, LLC and  Citizen's Bank, N.A. have been negligently, recklessly and knowingly disseminating false information regarding the Plaintiff's credit, namely by continuing to associate Plaintiff with this fraudulent account, particularly after the Plaintiff mailed letters to Defendants specifically advising them of this issue and submitting the necessary supporting documentation.

5.      Plaintiff further alleges that the consumer reporting agencies Transunion, Equifax and Experian failed to investigate credit report inaccuracies in response to Plaintiff's disputes.

6.      Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

## **JURISDICTION**

7.      The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.  All defendants regularly conduct business within the state of Florida and violated Plaintiff's rights under the FCRA in the state of Florida as alleged more fully below.

8.      Venue is proper in this judicial District pursuant to 28 U.S.C. 1391(b) because

Plaintiff resides in this District, Defendants conduct business in this District, and communications giving rise to this action occurred in this District.

## **PARTIES**

9.     Plaintiff, Thomas Beverly ("Plaintiff"), is a resident of Plainsboro, New Jersey and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10.     Defendant Equifax Information Services, LLC ("Equifax") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers.  Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

11.     Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

12.     Defendant Experian Information Solutions, Inc. ("Experian") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers.  Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

13.     Experian is a corporation with its headquarters located in Costa Mesa, California.

14.     Defendant Trans Union is also one of the largest credit reporting agencies in the

United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

15.    Trans Union is a company with its principal place of business located at 555 West Adams Street, Chicago, IL 60661.

16.    Defendant Citizens Bank, N.A. ("Citi Bank") is a financial institution with is principal office located at 1 Citizens Bank Way, Johnston, Rhode Island 02919.

## FACTUAL ALLEGATIONS

17.    Sometime prior to December of 2021, Plaintiff discovered he was the victim of identity theft. Around that same time, Plaintiff discovered that a number of accounts were appearing on his consumer credit reports from Equifax, Experian and Transunion (collectively the "CRAs"), which were opened without his knowledge or authorization to do so. Specifically, a number of accounts with Defendant Citi Bank. These accounts include:

- MACYS/CBNA account number 603534047934XXXX; and

- BEST BUY/CBNA account number 603535023813XXXX.

18.    Upon information and belief, these accounts were fraudulently opened by Plaintiff's father without his authorization.

19.    Plaintiff took appropriate action, including filing a police report and completing a sworn FTC Identity Theft Affidavit, in which he listed these accounts as they were appearing on his credit reports despite the fact that they were not his and he had never opened them.

20.    Accordingly, Plaintiff disputed these fraudulent accounts with the CRAs on or

about December 6, 2022. In those disputes, Plaintiff clearly advised the CRAs that he was the victim of identity theft, and that this information should be removed and blocked.

21.     With those disputes, Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

22.     Following receipt of Plaintiff's dispute, Experian refused to investigate, correct or remove the fraudulent MACYS/CBNA and BEST BUY/CBNA accounts from the Plaintiff's credit file.  Instead, that information is still being reported to this day.

23.     Upon information and belief, Experian had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

24.     Equifax also refused to investigate, correct or remove the fraudulent MACYS/CBNA account from the Plaintiff's credit file.  Instead, Equifax responded to Plaintiff's dispute on December 29, 2022 purporting to have 'verified' the account information as accurate. That information is still being reported to this day.

25.     Upon information and belief, Equifax had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

26.     Similarly, Transunion refused to investigate, correct or remove the fraudulent MACYS/CBNA and BEST BUY/CBNA accounts from the Plaintiff's credit file. Instead, Equifax responded to Plaintiff's dispute on December 30, 2022 purporting to have 'verified' the account information as accurate. That information is still being reported to this day.

27.     Upon information and belief, Transunion had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

28.     The CRAs and Citi Bank were each notified of the respective disputes, but refused to investigate and/or remove inaccurate reporting.

29.     At all times pertinent hereto, Defendants' violations of the FCRA were willful, and carried out in reckless disregard for consumer's rights as set forth under section 1681s, 1681i and 1681b of the FCRA. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

30.     Additionally, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

31.     In any event, Defendants are liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

32.     As a direct and proximate result of the Defendants' willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in his daily life, by the impact that this derogatory information has had on his credit score and his ability to secure credit.  For example, Plaintiff has been denied credit due to these derogatory inaccuracies, and has been offered credit on less favorable terms.

33.     Defendants' violations of the FCRA further caused the Plaintiff great distress, anger, annoyance and frustration in his daily life,  subjected the Plaintiff to abusive credit reporting practices from which Plaintiff had a substantive right to be free, and caused the dissemination of defamatory information regarding Plaintiff.

**COUNT I**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15  U.S.C. § 1681i**
**AGAINST EQUIFAX**

34.     All preceding paragraphs are realleged.

35.     At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

36.     The FCRA provides that:

>*"if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer* and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file* in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."*
>
>15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

37.    On or about December 6 of 2022, the Plaintiff initiated a dispute with Equifax requesting that they correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent Citi Bank and Midland accounts. Plaintiff provided information and documentation showing that he was the victim of identity theft and had not opened this account.

38.    Experience received the Plaintiff's December 6 dispute letter, as evidenced the certified mailing receipt in Plaintiff's possession.

39.    However, Defendant Equifax never adequately investigated the Plaintiff's disputes, as required by the FCRA.

40.    Instead, Equifax, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

41.    As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

**COUNT II**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681c-2**
**AGAINST EQUIFAX**

42.    All preceding paragraphs are realleged.

43.    On or about December 6, 2022, Plaintiff initiated a dispute with Equifax requesting that they correct and remove the fraudulent Citi Bank and Midland accounts, as these accounts were fraudulently opened by an individual other than the Plaintiff.

44.    In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

45.    Equifax refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

46.    As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Equifax continued to report this fraudulent information.

47.    As a direct and proximate result of Equifax's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

**COUNT III**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST EXPERIAN**

48.    All preceding paragraphs are realleged.

49.    At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

50.    The FCRA provides that:

>"***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file* in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
>
>15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

51.    On or about December 8 of 2022, the Plaintiff initiated a dispute with Equifax requesting that they correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent Citi Bank accounts. Plaintiff provided information and documentation showing that he was the victim of identity theft and had not opened these accounts.

52.    Equifax received the Plaintiff's December 6 dispute letter, as evidenced by its response letter.

53.    However, Experian never adequately investigated the Plaintiff's disputes, as required by the FCRA.

54.    Instead, Experian, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

55.    As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

**COUNT IV**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681c-2**
**AGAINST EXPERIAN**

56.     All preceding paragraphs are realleged.

57.     On or about December 6, 2022, Plaintiff initiated a dispute with Experian requesting that they correct and remove the fraudulent Citi Bank and Midland accounts, as these accounts were fraudulently opened by an individual other than the Plaintiff.

58.     In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

59.     Experian refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

60.     As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Experian continued to report this fraudulent information.

61.     As a direct and proximate result of Experian's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

**COUNT V**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST TRANSUNION**

62.     All preceding paragraphs are realleged.

63.     At all times pertinent hereto, Transunion was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

64.     The FCRA provides that:

    "*if the completeness or accuracy of any item of information contained in*

-10-

> ***a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
>
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

65.    On or about December 6 of 2022, the Plaintiff initiated a dispute with Transunion requesting that it correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent Citi Bank accounts. Plaintiff provided information and documentation showing that he was the victim of identity theft and had not opened these accounts.

66.    Transunion received the Plaintiff's December 6 dispute letter, as evidenced by its response letter.

67.    However, Transunion never adequately investigated the Plaintiff's disputes, as required by the FCRA.

68.    Instead, Transunion, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

69.    As a direct and proximate result of Transunion's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT VI
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c-2
### AGAINST EXPERIAN

70.     All preceding paragraphs are realleged.

71.     On or about December 6, 2022, Plaintiff initiated a dispute with Transunion requesting that they correct and remove the fraudulent Citi Bank accounts, as these accounts were fraudulently opened by an individual other than the Plaintiff.

72.     In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

73.     Transunion refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

74.     As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Transunion continued to report this fraudulent information.

75.     As a direct and proximate result of Transunion's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT VII
### FAILURE TO INVESTIGATE DISPUTE
### FCRA, 15 U.S.C. § 1681s-2(b)
### AGAINST CITI BANK

76.     All preceding paragraphs are re-alleged.

77.     Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

78.     On or about December 6 of 2022, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the accounts being reported by Citi Bank.

79.    Upon information and belief, Citi Bank received notice of these disputes from the credit bureaus.

80.    Citi Bank was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

81.    Even after the Plaintiff properly disputed these accounts with the credit reporting agencies, Citi Bank refused to conduct a reasonable investigation and continued inaccurately reporting the multiple fraudulent accounts on Plaintiff's credit reports.

82.    Citi Bank's conduct violated section 1681s-2(b) of the FCRA.

83.    As a result of Citi Bank's conduct, Plaintiff was harmed, as discussed above.

## **DEMAND FOR TRIAL BY JURY**

84.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

A.    Awarding Plaintiff actual damages, statutory damages and punitive damages pursuant to pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

B.    Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

C.    A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

D.    Equitable relief, enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

E.  Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: January 25, 2022

By:    /s/ Yitzchak Zelman
        MARCUS & ZELMAN, LLC
        701 Cookman Avenue, Suite 300
        Asbury Park, New Jersey 07712
        (732) 695-3282 telephone
        (732) 298-6256 facsimile
        *Attorney for Plaintiff*